OMNIPOINT CORPORATION and
Linda Genth, Plaintiffs,

v.

**ZONING HEARING BOARD OF PINE GROVE TOWNSHIP, Schuylkill County, Pennsylvania, and Bob Pankake, in his official capacity as zoning officer for Pine Grove Township, Defendants.**

Civil Action No. 97–7088.

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1998.

Linus E. Fenicle, Camp Hill, PA, for Plaintiffs.

Timothy J. McMahon, Harrisburg, PA, for Defendants.

## DECISION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

This action is filed under the Telecommunications Act of 1996, 47 U.S.C. § 332, ("TCA"). The Plaintiffs in this case, Omnipoint Corporation ("Omni") and Linda Genth, seek review of the Zoning Hearing Board of Pine Grove Township's ("Board") denial of its application for a special exception under § 902(3) of the Pine Grove Township Ordinance ("Zoning Ordinance").

We have reviewed the record and conclude that for the following reasons, Defendants have violated the TCA and Plaintiffs are entitled to the relief requested.[1]

### II. BACKGROUND

Plaintiffs and Defendants have stipulated to the following facts. On June 30, 1997, Omni applied for a special exception with the Board in order to erect a 114–foot telecommunications tower (monopole) on the property owned by Linda Genth. Jt. Statement at ¶ 5.[2] A telecommunications tower is a use permitted by special exception in the R–P Zoning District under the Zoning Ordinance. Id. at ¶ 8.

The Board held hearings on August 14, 1997 and September 11, 1997, to take testimony in regard to Omni's application for a special exception. Id. at ¶ 7. Lee Woodmansee, representing Omni through JM Consulting Group, presented testimony at the hearing on August 14, 1997. Id. at ¶ 9. He explained how Omni qualifies for a special exception pursuant to the requirements of § 902(3) of the Zoning Ordinance. Id. at ¶ 17. Mr. Woodmansee also testified that he had no first-hand knowledge about the effects of the structure on the values of adjoining properties and did not conduct any studies on the effects of the tower on the health and safety of the residents. See id. at ¶¶ 18–20. In response, a couple of adjoining landowners testified against the proposed erection of the tower. One adjoining landowner, David Ravegun, testified that the installation of the proposed structure would have an adverse effect on the value of his property, the character of the neighborhood and would endanger his health and safety. See id. at ¶¶ 35–43. Eleven additional protestants attested to the fact that if called to testify, they would raise substantially similar concerns as raised by Mr. Ravegun. Id. at 44–46.

Omni's application was denied in a written decision by the Board on October 21, 1997. Decision at 3.[3] In particular, the Board elucidated the following two reasons for its denial: "(1) no studies were done on the effect of adjoining land owners property values; and (2) the burden of proof with respect to the proposed structure not adversely effecting [sic] the general character of the neighborhood was not met." Id.

Plaintiffs are now asking this court to review the record of Omni's application to the Board and determine whether the Board's denial is in compliance with the TCA. In contrast, Defendants allege that the Board's decision did not violate the TCA because its

---

1. Pursuant to a telephonic conference on September 15, 1998, both counsel agreed to a nonjury trial for which a written decision would be rendered based on the Joint Statement of Undisputed Facts filed on August 28, 1998, and other materials contained in the record. This Joint Statement is incorporated herein by reference and serves as our findings of fact.

2. Joint Statement of Undisputed Facts filed on August 28, 1998, will hereinafter be referred to as: "Jt. Statement at ¶ _."

3. Decision of the Pine Grove Township Zoning Hearing Board in Re: Application of Omnipoint Corporation dated October 21, 1997, is hereinafter referred to as: "Decision at ___."

denial of Plaintiffs' application for a special exception permit was supported by substantial and credible evidence. We will consider each of these arguments in turn.

## III.  DISCUSSION

The primary purpose of the TCA is to increase competition in the telecommunications industry by preventing discriminatory and arbitrary conduct by local zoning boards relating to the placement, construction, and modification of personal wireless service facilities. While generally preserving the authority of local zoning boards, see 47 U.S.C. § 332(c)(7)(A), the TCA does explicitly limit certain aspects of the authority of local boards to regulate personal wireless services.

■ The TCA specifically states that state or local zoning regulations pertaining to wireless service facilities, "shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I). Nor may any state or local authority prohibit or have the effect of prohibiting "the provision of personal wireless services." *Id.* § 332(c)(7)(B)(i)(II). The TCA also procedurally requires that any request to place, construct, or modify personal wireless service facilities must be acted upon by authorities "within a reasonable period of time after request is duly filed" and any denial "shall be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(ii)-(iii). By denying Omni's application to place a telecommunications tower on the property owned by Genth, Defendants' actions clearly fall under the auspices of the TCA and abstention by this court would be improper.[4] *See, e.g., AT&T Wireless PCS, Inc. v. Winston–Salem Zoning Bd. of Adjustment,* 11 F.Supp.2d 760, 763, No. 1:97–CV01246, 1998 WL 337748, at *2 (M.D.N.C. Jun.12, 1998); *Gearon & Co., Inc. v. Fulton County, Georgia,* 5 F.Supp.2d 1351, 1354 (N.D.Ga.1998); *Western PCS II v. Extraterritorial Zoning Auth.,* 957 F.Supp. 1230, 1236 (D.N.M.1997); *cf. Paging, Inc. v.*

*Bd. of Zoning Appeals for Montgomery,* 957 F.Supp. 805, 807–8 (W.D.Va.1997). The present question before the court, therefore, is whether the Board's decision to deny Plaintiffs' application is supported by "substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

### A.   Lack of Substantial Evidence in the Record.

■ Plaintiffs allege that the Board violated the TCA by denying its application on the following grounds: (1) that Omni failed to conduct studies on the effect of proposed tower on adjoining property values; and (2) that Omni failed to meet the burden of proof for showing that the tower would not have adverse effects on the general character of the neighborhood. As noted above, the TCA requires that any decision by a zoning authority with respect to personal wireless services must be supported by "substantial evidence" within the record. 47 U.S.C. § 332(c)(7)(B)(iii). Congress' intent behind the substantial evidence requirement is that the decisions of local zoning authorities are to be reviewed in a manner equivalent to traditional judicial review of an administrative agency decision. *See* H.R. Conf. No. 104–458, 104th Cong., 2d Sess. 208 (1996), *reprinted in,* 1996 U.S.C.A.A.N. Substantial evidence is more than a mere scintilla, it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1952). Although this court is not free to substitute its judgment for that of zoning authority, "it must overturn the board's decision under the substantial evidence test if it 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.'" *BellSouth Mobility Inc. v. Gwinnett County, Georgia,* 944 F.Supp. 923, 928 (N.D.Ga.1996)

---

4. Federal courts are otherwise required to abstain when the TCA does not preempt state or local authority because no question of federal law is present. In *GTE Mobilnet of Ohio v. Johnson,* the court abstained because the TCA

did not facially preempt state authority to adjudicate individual cases of anti-competitive or discriminatory misconduct by wireless service providers. 111 F.3d 469, 480 (6th Cir.1997).

(quoting *Bickerstaff Clay Products Co., Inc. v. NLRB*, 871 F.2d 980, 984 (11th Cir.1989)).

■ In reviewing the current record, this court finds that no substantial evidence exists in support of the Board's denial of Omni's application for a special exception. Not only did the Board misapply the burden of proof required in special exception cases, but its denial is also based on mere speculation that Omni's project was detrimental to the health, safety and welfare of the community.

■ Under Pennsylvania law, a special exception is not an exception to a zoning ordinance, but rather a use which is expressly and presumptively permitted. *Johnson v. North Strabane Township*, 119 Pa.Cmwlth. 260, 546 A.2d 1334, 1334 n. 1 (Pa. Commw.Ct.1988). In other words, once the applicant has shown that its use falls within the special exception, the burden is on the protestants to show that such a use has a detrimental effect in the community. *Heck v. Zoning Hearing Bd. for Harvey's Lake*, 39 Pa.Cmwlth. 570, 397 A.2d 15, 18 (Pa. Commw.Ct.1979).

■ However, a zoning ordinance may, as here, place the burden of proof on the applicant to show that the proposed project is not a detriment to the health, safety and general welfare of the neighborhood.[5] *See Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Bd.*, 139 Pa.Cmwlth. 206, 590 A.2d 65, 70 (Pa.Commw.Ct.1991). Courts have held, however, that such an ordinance "places only the persuasion burden on the applicant because ... the objector retains the evidence presentation duty as to such matters." *Bray v. Zoning Bd. of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909, 912 (Pa.Commw.Ct.1980); *see also Manor*, 590 A.2d at 70; *Kern v. Zoning Hearing Bd. of Township of Tredyffrin*, 68 Pa.Cmwlth.

396, 449 A.2d 781, 783 (Pa.Commw.Ct.1982). Thus under the Pine Grove Township's Ordinance, protestants still retain the *initial* presentation burden with respect to the detrimental effect of the project on the character, property values, health and safety of the neighborhood and its residents.

Furthermore, this initial presentation burden requires protestants to establish their objection with a "high degree of probability," and raise "specific issues" concerning the proposal's general detrimental effect on the community. *Manor*, 590 A.2d at 71. In *Appeal of R.C. Maxwell Co.*, for example, the court held that a resident's mere speculation on how the proposed billboards would affect the safety of residents was insufficient to satisfy the resident's initial burden of presentation. 120 Pa.Cmwlth. 251, 548 A.2d 1300, 1304 (Pa.Commw.Ct.1988). Another court has held that residents' personal opinions expressed against the construction of a correctional facility were highly speculative because their fears were unsupported by any substantive evidence (e.g., studies, police records or property valuations). *Commonwealth of Pennsylvania Bureau of Corrections v. Pittsburgh City Council*, 516 Pa. 75, 532 A.2d 12, 14 (Pa.1987). Protestants, therefore, cannot meet their burden of initial presentation by merely speculating as to possible harm to the community at large. *Manor*, 590 A.2d at 71.

■ In reviewing the record, we are convinced that the Board did not apply the proper burden of proof in making its decision to deny Omni's application. The Board seems to believe that both the burden of persuasion and initial presentation are on the Plaintiffs as to the generalized requirements of the Pine Grove Zoning Ordinance. In the Board's written decision, for example, Omni's

---

5. Section 902 of the Pine Grove Township Zoning Ordinance provides that:

The Board shall hear and decide, upon application, only such special exceptions which the Board by the provisions of this Ordinance is specifically authorized to issue. The granting of a special exception when specifically authorized by the terms of this Ordinance shall be subject to the following standards and criteria. The applicant for a Special Exception shall demonstrate, as a condition to approval of his application,

compliance with these criteria and those criteria specified elsewhere in this Ordinance for the use in question.
... (c) Such use shall not adversely affect the character of the general neighborhood, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood nor the reasonable use of neighboring properties. The use of adjacent properties shall be adequately safeguarded.

application was denied because "[t]he burden of proof with respect to the proposed structure not adversely effecting [sic] the general character of the neighborhood was not met." Decision at 3. Moreover, Defendants now claim in their Brief that Omni failed to present substantial evidence to suggest that the proposed use would be consistent with the spirit, purpose and intent of the Zoning Ordinance. Def.'s Br. at 11–12.[6] The above claims presume that Plaintiffs have the burden to prove that its application is in conformity with the Zoning Ordinance—even prior to any initial presentation of specific evidence by the protestants. When zoning ordinance requirements are generalized, as in the present case, an applicant cannot tell what issues must be met until the protestants assert those issues.

■ Even if the Board did properly apply the burden of proof in their decision, we believe that the denial of Omni's application was erroneous because the protestants failed to establish their objections with a sufficiently high degree of probability. While Defendants also argue that the protestants raised specific issues of the proposed structure's effect on property values, aesthetic considerations and the health and safety of residents, any claims asserted by protestants were at best very general and speculative. For example, Mr. Ravegun testified that in his personal opinion, the installation of the tower would have an adverse effect on the value of his property and that it would endanger his health and safety.[7] Jt. Statement at ¶¶ 40–41. The additional eleven protestants added nothing new and simply confirmed that they would present substantially similar testimony to Mr. Ravegun. Id. at ¶¶ 44–46. Protestants in the present case, similar to objectors who testified in Maxwell and Bureau of Corrections, did no more than offer unsubstantiated personal opinions about the effect of the proposed tower. Without more direct evidence, therefore, it cannot be said that protestants have satisfied their initial burden of presentation so that the burden may then shift to Omni to refute these charges.

■ Moreover, a review of Pennsylvania law reveals that both economic and aesthetic considerations are not a sufficient basis for denying an application for a special exception. As stated by one court: "[n]either aesthetic reasons nor the conservation of property values nor the stabilization of economic values in a township are, singly, or combined, sufficient to promote the health or the morals or the safety of the general welfare of the township." Soble Construction Co. v. Zoning Hearing Board of the Borough of East Stroudsburg, 16 Pa.Cmwlth. 599, 329 A.2d 912, 917 (Pa.Commw.Ct.1974); see also Heck, 397 A.2d at 19. Even if Mr. Ravegun and other residents had established by a sufficiently high degree of probability that aesthetic considerations and property values would be affected, such claims cannot alone support a denial of a special exception application.

■ In reviewing other federal court decisions under the TCA, we are convinced that the Board's action was not supported by substantial evidence. Generalized concerns and conclusive statements within the record about the aesthetic and visual impacts on the neighborhood do not amount to substantial evidence. See, e.g., BellSouth, 944 F.Supp. at 928; Illinois RSA, 963 F.Supp. at 745. This court, therefore, concludes that the Board has not satisfied the procedural requirement of the TCA in having its denial of Omni's application supported by substantial evidence.

## B. Other Zoning Provisions

In an additional attempt to support the Board's decision, Defendants now raise a

6. Defendants' Brief filed on August 28, 1998, is hereinafter referred to as: "Def.'s Br. at ___."

7. Even if such purported health effects were based on scientific evidence, which they are not, this court is not permitted to consider evidence of supposed ill health effects of radio frequency emissions pursuant to the TCA. Under 47 U.S.C. § 332(c)(7)(B)(iv), "No State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." See also Illinois RSA No. 3, Inc. v. County of Peoria, 963 F.Supp. 732, 745 (C.D.Ill.1997).

third ground for denying Omni's application. Defendants now allege that Omni failed to satisfy the requirements of § 626 of the Zoning Ordinance. When special exceptions are granted by the Board pursuant to § 902 of the Zoning Ordinance, any exceptions for public utilities in rural preservation districts are subject to § 626 as follows: "all public utility facilities, storage and activities outside a building, including parking and loading, shall be screened from view from public streets and adjoining lots." Defendants argue that the proposed 114–foot tower would certainly be observable to adjacent landowners and that Omni failed to propose any kind of structure to screen the tower from view. Def.'s Br. at 8–9.

We cannot help but conclude that this argument had nothing to do with the denial of Omni's application in the first instance. No where in the record of the Board's hearing can we find any mention of the fact that Plaintiffs failed to satisfy the requirements of § 626. Nor is it an elucidated basis for the denial of Omni's application. *See* Decision at 3. Consequently, we find that even if the Board did deny the application based upon § 626, there is no substantial evidence in the written record to justify such a denial.

■ Even if non-compliance with § 626 had been properly raised as a rationale for denial in this case, Defendants' application of this provision to the proposed erection of the tower not only defies logic, but would also be a violation of the TCA. We must assume that the term "public utility facilities" in § 626 does not apply to monopole structures. It is absurd to think that any Zoning Ordinance would require a tower to be obscured from view by a fence at least 114 feet high. Furthermore, if this provision was applied to every telecommunications tower for wireless services, it would have the effect of prohibiting the provision of wireless services in contravention of the plain language of the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II). Defendants' application of § 626 is erroneous and not a ground on which the Board could have denied Omni's application.

## IV.   REMEDY

■ Plaintiffs have specifically requested a Writ of Mandamus so that this court may grant relief by directing the issuance of a special exception permit. We are aware that Fed.R.Civ.P. 81(b) has apparently abolished the Writ of Mandamus. Nevertheless, several federal courts have held that they are vested with sufficient authority to grant mandamus relief under the TCA if such relief would be warranted under the circumstances. *See e.g., Western PCS II,* 957 F.Supp. at 1233; *BellSouth,* 944 F.Supp. at 929; *AT&T Wireless PCS,* 11 F.Supp.2d 760, 769, 1998 WL 337748, at *9. We will deem Plaintiffs' request to be an application for an order granting injunctive type relief.

One alternative remedy in the present case would be to remand the matter to the Board and allow it to issue a new decision. While this court may simply remand the matter to the Board, we believe that such an action would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis. *See Illinois RSA,* 963 F.Supp. at 747. The Board and protestants already had a full opportunity to present and hear evidence with regard to Omni's application and we see no reason to send this case back to that body for further proceedings. Nor can we see any reason to believe that different or substantial evidence would be presented.

We conclude, therefore, that the Board's denial constitutes an abuse of discretion and that it lacks any objective grounds of support. We believe the Plaintiffs are entitled to the issuance of an order commanding the grant of the application by the Board. An appropriate order follows.

## ORDER

AND NOW, on this 16th of September, 1998, upon consideration of the briefs and stipulated facts submitted by the parties, and consistent with the foregoing opinion, the decision of the Zoning Hearing Board of Pine Grove Township denying the application of Plaintiffs for a special exception is hereby REVERSED. Plaintiffs' request for a Writ of Mandamus is hereby GRANTED in the form of final injunctive relief.

The Zoning Hearing Board of Pine Grove Township is hereby ORDERED to issue Plaintiffs the requested special exception. The Zoning Officer of Pine Grove Township is hereby ORDERED to issue all necessary zoning and building permits upon payment of any outstanding fees. The foregoing provisions of this order pertaining to the issuance of the special exception and zoning and building permits shall be complied with within thirty days of the date of this order. This case is closed, however, the court will retain jurisdiction for enforcement purposes.