**IOWA WIRELESS SERVICES, L.P., Plaintiff,**

v.

**CITY OF MOLINE, ILLINOIS, Defendant.**

No. 98–4090.

United States District Court, C.D. Illinois.

Nov. 10, 1998.

---

Theodore F. Olt, III, Lane & Waterman, Davenport, IA, John D Telleen, Lane & Waterman, Rock Island, IL, for Iowa Wireless Services LP, plaintiff.

Jodi K. Plagenz, City Attorney, Moline, IL, Jeffrey D. Lester, Moline, IL, for City of Moline, defendant.

## ORDER

MIHM, Chief Judge.

This matter is before the Court on Iowa Wireless' (IW) Motion for Partial Summary Judgment [# 9] and the City of Moline's (City or Moline) Motion for Summary Judgment [# 14]. For reasons set forth below, Plaintiff's Motion for Partial Summary Judgment [# 9] is GRANTED IN PART and DENIED IN PART. Likewise, Defendant's Motion for Summary Judgment [# 14] is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED on Count I in favor of Iowa Wireless. Summary Judgment is GRANTED on Counts II, III and IV in favor of the City of Moline. The City of Moline is ordered to grant Iowa Wireless a Special Use Permit to build the proposed digital tower on the 7th Street Lot

with all deliberate speed. Count V remains. Plaintiff is directed to submit a supplemental brief with respect to Count V within 30 days; Defendant is to respond 14 days thereafter, with any reply filed to be filed 7 days thereafter. The Clerk is directed to enter final judgment pursuant to Rule 54(b) on Counts I, II, III, and IV as this Court finds that there is no just reason for delay.

### Background

Iowa Wireless (IW) is a company licensed by the Federal Communications Commission (FCC) to provide wireless personal communications services to the public. With a digital signal, IW is capable of providing wireless Internet access, fax transmissions, caller identification and voice mail. To do so, antennae must be located at intervals so that a provider such as IW can serve an uninterrupted area.

It is undisputed that IW needs five antennae in order to provide complete coverage in the Moline area. Four such antennae have been located in the Moline area. These antennae were able to be collocated, that is, placed on already existing towers, thereby eliminating the need to construct a new tower. An investigation by IW determined that a fifth antenna (which is the subject of the present dispute) needed to be located in the vicinity of 3033½ (7th St.Lot). There are already three towers in the vicinity of the 7th St. Lot.

Two of the three towers are not suitable for collocation. The third, a GTE tower, is the subject of some dispute. IW claims that the tower is too short to provide adequate digital transmission and that GTE will not consent to its removal and the subsequent construction of a taller tower by IW which is suitable for collocation. Moreover, IW argues that if this occurs, GTE will become a tenant and IW the landlord—contrary to the arrangement which would occur if the existing tower were amenable for collocation. At oral arguments on the Motions, the City argued that this was not necessarily so. It pointed out that IW could build the tower and then give it to GTE with the understanding that IW would be GTE's tenant. IW objected to this proposal and indicated that the competitive nature of GTE's and IW's relationship prevents collocation. Moline points out, however, that GTE has been willing to collocate with IW at other sites and speculates that IW's real reason for objecting to collocation is because it will be more costly. It is worth noting, though, a consultant retained by Moline concluded that collocation was not feasible on the GTE tower.

The 158–foot GTE tower was built pursuant to a Special Use Permit granted by the City of Moline in July 1997. There was no public opposition to GTE's request for a Special Use Permit. There have been no changes to the Special Use Permit Provision in the Moline Code of Ordinances since Moline granted GTE a Special Use Permit. GTE and IW provide similar services, and it is undisputed that they are competitors. It is also undisputed that if IW is unable to construct or collocate an antenna at the 7th St. Lot, it will be unable to provide seamless and complete service in Moline. The parties agree that seamless service is essential in order to compete with other providers.

On May 26, 1998, IW filed an application for a Special Use Permit for the construction of a tower at the 7th St. Lot. The City of Moline Planning Staff recommended approval of the application; however, the City of Moline Planning and Public Safety Committee recommended denial of IW's application, purportedly because IW failed to adequately document its efforts to collocate its antenna.

On September 1, 1998 after a public hearing on the motion for a Special Use Permit, the City of Moline denied IW's application. At the hearing citizens voiced their complaints about the IW's proposed tower. Citizens stated opinions that an additional tower would detrimentally affect the value of real estate, blight the landscape, potentially cause adverse health affects, pose a threat to public safety, and cause interference with electrical appliances.

In response to concerns expressed by citizens over the structural integrity of the proposed tower, an IW representative testified that such fears were unfounded. As for the issue of property values, IW admits that Larry Foley, a resident of Moline with property adjoining the proposed site and a licensed real estate appraiser, spoke on the issue. IW points out that Foley did not make his credentials known at the hearing,

nor did he undertake a study of how real estate values would be affected by the addition of a fourth tower.

At least three attendees of the meeting commented on their fears that the tower would not be aesthetically pleasing. As one resident said, "We already have a problem there with three existing towers. We do not want a tower farm in our neighborhood." (Tr. City Council Meeting at 20). The City Council denied the request for a permit by a 5 to 3 vote.

After the denial, the City Council approved a motion directing a staff member to prepare a written decision reflecting the reasons for the denial. Much of the present dispute centers around the adequacy of the written denial. The denial was memorialized in a motion and approved at the September 8, 1998 City Council meeting. It states:

> I move that the Council enter a formal finding that the project would produce health concerns for the residents and others nearby and produce inappropriate radio emissions; that the council had strong safety concerns of the structural integrity of the proposed tower as designed or proposed; that the council believed that neighboring property or properties would be negatively impacted from a financial and aesthetic standpoint, resulting in further land value depreciation; and for all other reasons as set forth in the written record and materials contained throughout the zoning/permit process and the Council further clarify that written record upon which it acted is as set forth in the minutes to the 9/2/98 meeting and as attached hereto as Exhibit Z for purposes of clarifying both written and base upon which the Council acted in disapproving Council Bill 98–237.

Exhibit J to Pl's Stmt. of Undisp. Fact.

IW filed a five-count Complaint alleging four counts arising under the Telecommunications Act of 1996(TCA) and one count under 42 U.S.C. § 1983. Count I alleges a violation of Section 704(c)(7)(B)(iii) of the TCA. Count II alleges a violation of Section 704(c)(7)(B)(i)(*l* ) of the TCA. Count III alleg-

es a violation of Section 704(c)(7)(B)(i)(II). Count IV alleges a violation under Section 704(c)(7)(B)(iv).[1] Count V seeks relief under 42 U.S.C. § 1983.

IW asks this Court to issue a writ of mandamus directing the City of Moline to approve a Special Use Permit, a TRO and Permanent Injunction prohibiting Moline from taking any further action in violation of the TCA, a money judgment against Moline to compensate IW for its loss resulting from Moline's violation of the TCA, and attorney's fees and costs. IW moves for partial summary judgment, and the City of Moline moves for summary judgment.

### *Standard*

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden by showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving then has the burden of presenting specific facts to show that there is no genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need

---

1. Section 704 refers to the codified section number. This section appears as 47 *U.S.C.* § 332 in the United States Code. So, for example § 704(c)(7(B)(iii) is the same as § 332(c)(7)(B)(iii). As more practitioners have access to the *United States Code*, this Court will cite thereto.

for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson,* 106 S.Ct. at 2511.

### Discussion

■■■ In general, zoning is an issue of local concern and, within limits, local authorities exercise broad discretion over such decisions. In the landmark case of *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court remarked:

We also note that zoning laws and their provisions, long considered essential to effective urban planning, are peculiarly within the province of state and local legislative authorities. They are, of course subject to judicial review in a proper case. But citizens dissatisfied with provisions of such laws need not overlook the availability of the normal democratic process.

*Id.* at 2210 n. 18. With this in mind, this Court presumes that absent the TCA, the Moline Council decision would not be an appropriate matter for review in federal court.

1. *Count I—Written Denial and Substantial Evidence Pursuant to § 332(c)(7)(B)(iii)*

IW claims that it is entitled to summary judgment on Count I because it asserts that Moline's decision to deny IW's application for a permit did not comport to the requirements of the TCA. Specifically, the TCA requires that the denial of an application "shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

A. *Written Denial*

■■■ IW argues that the motion which was memorialized in writing does not suffice. IW states:

Neither the motion nor any other written document specifically explains the reason for the denial of the evidence upon which Moline relied in reaching its decision. Iowa Wireless and this Court need to fish through the "written record and materials contained throughout the zoning/permit process" to try and determine where evi-

dence might have supported the City's decision.

Pl's Memo in Support at 6–7.

The TCA does not define the terms "substantial evidence," "in writing" or "written records." However, a district court in this district has concluded that:

Those terms plainly require the state or local governments to issue decisions regarding personal wireless service facilities in written form, stating the reasons for the decision, and providing written evidence or a written record of the proceedings that led to the government entity's decision.

\* \* \* \* \* \*

Decisionmak[ers] must make written findings and conclusions so that reviewing bodies may efficiently judge those findings and conclusions against the evidence and the record.

*Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 743 (C.D.Ill.1997).

■■■ This Court does not find that the statute requires such an elaborate denial. The TCA, in this instance, is clear and unambiguous. It simply requires written denial supported by substantial evidence in the written record. This plain-meaning approach was adopted by the Fourth Circuit in *AT&T Wireless PCS, Inc. v. Virginia Beach,* 155 F.3d 423, 429 (4th Cir.1998), which reversed a district court's finding that the written decision had to include a rationale for the denial.

■■■ The City provided IW with a sufficient written denial under the TCA. While the memorialization of the denial of IW's request is not as extensive as many judicial or administrative opinions, it clearly was sufficient under the plain meaning of the TCA. Moreover, IW's complaint that the decision is invalid because it was written by a staff member is not well taken. First, there is nothing in the TCA which would indicate that a denial must be drafted by the decision making body. Second, it seems entirely reasonable that a decision making entity could and would rely on a staff member or an attorney to draft the denial—a widely-followed practice at all levels of government. The important thing is that the City Council

approved the wording of the motion as made. In sum, the City's written denial was sufficient under the TCA.

### B. *Substantial Evidence*

■ The next question this Court is faced with is whether the denial of IW's application was supported by substantial evidence. In cases involving the TCA, courts have defined "substantial evidence" to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Illinois RSA*, 963 F.Supp. at 743. Moreover, when deciding whether a decision rests on substantial evidence, this Court must consider all of the evidence in the record—the evidence in favor of the decision under review as well as the evidence opposed to the decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Moline argues that there is substantial evidence; IW argues to the contrary. At oral arguments the parties identified five potential rationales which might support a denial: 1) health concerns concerning radio waves; 2) radio interference; 3) structural safety concerns; 4) effect on land values; and 5) aesthetic blight. The Court addresses each.

■ While some citizens expressed concerns over the health effect of the radio transmissions caused by the proposed tower, no actual evidence, other than mere conjecture, was presented. IW, however, has provided evidence that the emissions are safe and that harm is unlikely given FCC regulation of the industry. Accordingly, no evidence on this point supporting denial of IW's application exists.

■ At the hearing, concern was expressed over interference allegedly caused by the existing towers in certain electronic equipment appliances. IW provided evidence that this interference was caused by a nearby radio station tower and that a digital tower would not bleed over onto frequencies not licensed to IW. Again, as to this issue, it appears that there is no factual basis which would support a denial.

■ Likewise, there is no evidence supporting the general concerns expressed by a few citizens that the proposed tower posed a threat to the public because it might collapse.

While one citizen provided evidence that a tower had fallen when it was hit by a tornado, IW provides evidence that the tower was of an old design and that an IW tower in the vicinity of the tornado did not collapse. Furthermore, IW provided evidence that the proposed tower would be constructed to FCC specifications and that it would be designed to collapse on itself, not topple as earlier designs could. A layperson's testimony that a tower might fall is simply not probative evidence, given the evidence IW presented to the contrary.

■ More difficult questions arise, however, when this Court is asked to evaluate the effect of the citizens' stated concerns regarding the negative aesthetic effect and diminished real estate value which might result if the tower is built. A number of district courts have held that the generalized concerns of citizens are insufficient to rise to the level of substantial evidence. The court in *Illinois RSA* stated:

> The opposing evidence consisted of local property owners' objections based on health concerns, fears about diminished property values, and generalized concern that [the applicant] had not adequately investigated alternate sites. Under scrutiny, none of this evidence amounts to more than a scintilla of support for the County's final decision.

*Illinois RSA*, 963 F.Supp. at 744.

Other courts have followed this rule. *See, e.g., Sprint Spectrum v. Town of Farmington*, 1997 WL 631104, at *3 (D.Conn.), holding that general fear of tower proliferation was unsupported by the evidence and consequently did not constitute substantial evidence. *See also Omnipoint v. Pine Grove Township*, 20 F.Supp.2d 875, 879 (E.D.Pa.), holding that under Pennsylvania law economic and aesthetic considerations are not a sufficient basis for denying an application for a special exception.

Moline draws this Court's attention to *AT&T Wireless PCS, Inc., et al. v. City Council of Virginia Beach*, 155 F.3d 423 (4th Cir.1998). There, the court held that the reliance on the general concerns of citizens can amount to substantial evidence for purposes of the TCA. The court stated:

The Virginia Beach City Council is a state legislative body, not a federal administrative agency. The "reasonable mind" of a legislator is not necessarily the same as the "reasonable mind" of a bureaucrat, and one should keep the distinction in mind when attempting to impose the "substantial evidence" standard onto the world of legislative decisions. It is not only proper but even expected that a legislature and its members will consider the views of their constituents to be particularly compelling forms of evidence, in zoning as in all other legislative matters. These views, if widely shared, will often trump those of bureaucrats or experts in the minds of reasonable legislators.

*Virginia Beach,* 155 F.3d at 430.

■ This Court agrees that the concerns of citizens regarding potential aesthetic or economic effects may amount to "substantial" evidence in some circumstances; however, the record in the instant matter does not support such a finding.

It should be noted that the facts in *Virginia Beach* differ significantly from the facts in the present case. First, the record in *Virginia Beach* evidences community concern which was much more widespread than the record reflects in the present case. The *Virginia Beach* court made specific reference to the fact that a petition with 90 signatures opposing the tower evidenced broad opposition to the tower. Second, at the time of the application the town of Virginia Beach had no commercial antennae or above-ground power lines and was described as a heavily-wooded residential area.

In the case *sub judice,* three towers already exist near the proposed location. This Court also notes, parenthetically, that in *Sprint Spectrum L.P. v. Farmington,* 1997 WL 631104 (D.Conn.), it was found that where other towers existed nearby, the construction of another shorter tower would appear to negate the municipality's allegation that it would cause urban blight. Moreover, in the instant matter, the proposed location was zoned not only for residential dwellings, but also for limited commercial purposes. Finally, and most importantly, the public concern over the proposed tower in the instant matter was much more limited than was apparently exhibited in *Virginia Beach.*

In the instant case, only three citizens spoke out at the City Council meeting and indicated their concern that the proposed tower would detrimentally affect the aesthetic quality of the surrounding area. The record on this issue presents a close call; however when the record is viewed as a whole, this Court finds that generalized comments of three citizens who speculate that a fourth tower will impair the aesthetic quality of the area do not amount to "substantial evidence" within the meaning of the statute, especially since there are already three towers near the proposed location.

■ Finally, Moline contends that substantial evidence can be found in Larry Foley's statements before the City Council that such a tower would have a negative effect on property values. While the City points out that Mr. Foley is a licensed real estate appraiser, this fact was not presented in the City Council hearing. This Court presumes that the Council took his testimony to be that of a layperson, although counsel for Moline indicated that in a city the size of Moline, it would not be uncommon for the Council members to know of Foley's occupation. It should be noted that, in any event, Mr. Foley did not conduct any studies or marshal any evidence besides his conclusory opinion that the addition of a fourth tower would decrease property values. This simply does not amount to "substantial" evidence upon which Moline could legitimately base its decision, especially since Foley did not attempt to explain the effect that an *additional* tower would have had.

While the TCA is designed to preserve significant local authority, the thrust of the TCA is to increase competition in the telecommunications industry by preventing discriminatory and arbitrary conduct by local zoning boards relating to the placement, construction and modification of personal wireless service facilities. *See* 47 U.S.C. § 332(c)(7)(A). It would completely frustrate the purpose of the statute if the voicing of negative opinions by a small number of citizens, without more, could serve as a basis for denial. Any municipality could defeat the request for a permit by simply making a very limited record that in the opinion of three or

four citizens the tower would blight the landscape. Congress did not intend that rejection of a license application could be accomplished on such a sparse record. The record indicates that the Council considered that they might wait 30 days in order to develop a record, but this was not done. Conceivably, Moline might have developed an adequate record supported by substantial evidence that an additional tower would detrimentally impact the aesthetic environment and property values. That was not done. Accordingly, this Court holds that the City of Moline did not base its refusal on "substantial evidence" within the meaning of the TCA and that the City of Moline must issue a Special Use Permit with all deliberate speed. Summary Judgment on Count I is accordingly granted in favor of IW.

2. *Count II—Denial of IW's Application Constitutes Unreasonable Discrimination in Violation of 47 U.S.C. § 704(c)(7)(B)(i)(I)*

▮ IW also moves for summary judgment on its claim that it was discriminated against when it was denied a Special Use Permit. Specifically, IW points to the fact that only 14 months earlier GTE was granted a Special Use Permit to construct a cellular communications tower on 7th Street.

The TCA prohibits municipalities from "unreasonably discriminating among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I).

Moline argues that its denial of the special use permit was not "unreasonably discriminatory." First, the City argues that there is no evidence that the City's action would have been different had any other provider wishing to construct a new tower applied. Second, there is no evidence that the City favored analogue over digital services. Third, the City calls attention to the fact that Moline's approval of IW's installation of four other antennae within the City by IW indicates that it did not "unreasonably discriminate."

Moreover, the City argues that the circumstances have changed since GTE received permission to build its tower. When GTE sought permission, there were only two towers—not three. This, contends Moline, is a reasonable consideration to take into account.

Also, Moline contends that, unlike the present situation, the City received no objections to the GTE tower.

This Court finds that no reasonable jury could find that the City of Moline, by refusing to issue the permit, "unreasonably discriminated" against IW. Accordingly, summary judgment for Defendant on Count II is appropriate.

3. *Count III—Denial of IW's Application Violated TCA Because It Has the Effect of Prohibiting Personal Wireless Services Pursuant to § 704(c)(7)(B)(i)(II)*

▮ The TCA prohibits local action which "prohibits or has the effect of prohibiting personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). IW's position is that without its new tower, a substantial portion of Moline will be left without *digital* personal wireless service, which IW claims is a significant advance in the field of cellular communications. Moline argues that this portion of the statute only applies where rules or policies impose a blanket or general ban on personal wireless services. The City argues that since GTE was allowed to construct a tower in 1997 and since IW already has four antennae in the City, these facts would belie any implication that the City somehow seeks to preclude wireless technology from being distributed to its residents.

While there is some case law which indicates that the denial of *digital* technology constitutes a prohibition under the TCA, *see Western PCS II v. Extraterritorial Zoning Auth.*, 957 F.Supp. 1230, 1238 (D.N.M.1997), this Court finds such a reading is too broad. The TCA unambiguously seeks to protect against the prohibition of "personal wireless services." The term "personal wireless services" is defined by the statute as meaning "commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services." § 332(c)(7)(C)(ii). Accordingly, a plain reading of the TCA does not require municipalities to pave the way for every incremental advance in technology. As it appears from the record that personal wireless service is available in Moline, this Court cannot conclude that the City's denial of IW's applica-

tion for a Special Use Permit resulted in the prohibition of wireless services. Any conclusion to the contrary would be unworkable. Accordingly, Defendant's Motion for Summary Judgment is granted on Count III.

### 4. Count IV—Environmental Concerns Impermissible Under § 704(c)(7)(B)(iv)

 IW also argues that Moline violated the TCA by considering the environmental effects of the radio waves which would be caused by the tower. The relevant portion of the TCA states:

> No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv).

 While it is clear from the record that the City of Moline considered potential *health effects* of the tower, it is less clear that they considered *environmental effects*. In any event, Moline's position, which this Court finds correct, is that this statute prevents the denial of a permit on the sole basis that the facility would cause negative environmental effects. Here, even if it were to be concluded that the expressed "health concerns" fell within the meaning of "environmental effects," the decision which denied IW's application articulated other reasons besides that of environmental concerns. Accordingly, this does not serve as a basis for a finding for IW, and the City's Motion for Summary Judgment on Count IV is granted.

### 5. Count V—IW's § 1983 Claim

In Count V, IW seeks recovery of damages and attorney's fees under 42 U.S.C. § 1983, alleging that the City violated a federally protected right. The City asserts that any award would be unjust, arguing that it had a good faith belief that federal law would be extended. The pleadings filed thus far do not clearly indicate what standard should be applied in the present situation. Accordingly, the Court hereby orders additional briefing on the matter and reserves ruling on Count V. The parties should inform the Court as to whether the violation of the statute has to be knowing, or whether the negligence can serve as a basis for § 1983 liability in this type of situation. Plaintiff is directed to submit a supplemental brief with respect to the above-described issue within 30 days; Defendant is to respond 14 days thereafter, with any reply filed to be filed 7 days thereafter.

### Conclusion

It may well be that if the City of Moline had proceeded with cautious attention to the requirements of the TCA, an appropriate record could have been created here that would support a rejection of IW's application. That was not done. Consequently, Plaintiff's Motion for Partial Summary Judgment [# 9] is GRANTED IN PART and DENIED IN PART. Likewise, Defendant's Motion for Summary Judgment [# 14] is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED on Count I in favor of Iowa Wireless. Summary Judgment is GRANTED on Counts II, III and IV in favor of the City of Moline. The City of Moline is ordered to grant Iowa Wireless a Special Use Permit to build the proposed digital tower on the 7th Street Lot with all deliberate speed. Count V remains. Plaintiff is directed to submit a supplemental brief with respect to Count V within 30 days; Defendant is to respond 14 days thereafter, with any reply filed to be filed 7 days thereafter. The Clerk is directed to enter final judgment pursuant to Rule 54(b) on Counts I, II, III, and IV as this Court finds that there is no just reason for delay.