**SPRINT SPECTRUM L.P., a Delaware limited partnership, Plaintiff,**

v.

**CHARTER TOWNSHIP OF WEST BLOOMFIELD, a Michigan charter township, Defendant.**

No. 00–CV–72657–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 30, 2001.

Gregory K. Need, Bloomfield Hills, David E. Gordon, Chicago, IL, for plaintiff.

Gerald A. Fisher, Carol A. Rosati, Farmington Hills, MI, for defendant.

### OPINION

DUGGAN, District Judge.

On June 13, 2000, Plaintiff, Sprint Spectrum, L.P., filed suit against Defendant, Charter Township of West Bloomfield, alleging that the Township violated the Telecommunications Act of 1996, 47 U.S.C. § 151, *et. seq.*, when it denied Sprint's application to build a communication tower. The matter is currently before the Court on Defendant's motion for summary judgment and Plaintiff's cross motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court entertained oral argument on November 1, 2000. For the reasons set forth below, Defendant's motion for summary judgment shall be granted and Plaintiff's motion for partial summary judgment shall be denied.

### Background

Plaintiff, Sprint Spectrum ("Sprint"), is a limited partnership organized and existing under the laws of Delaware, with its principal place of business in Kansas City, Missouri. Sprint and its affiliates, are building a nationwide Personal Communication Services ("PCS") network across the country. As part of the development of its network, Sprint wants to build a tower in West Bloomfield Township, Michigan. Sprint selected a site at the rear of the Robin's Nest Shopping Center, which is located on the east side of Orchard Lake Road, north of Northwestern Highway. However, before constructing a tower on that site, Sprint must obtain a special use permit from the Charter Township of West Bloomfield, a Michigan charter township ("the Township").

Sprint submitted an application to the Township for a special use permit on January 18, 2000. Over the next four months the Township's Planning Commission met to examine Sprint's application. On April 11, 2000, the planning commission voted to recommend approval of Sprint's application, subject to certain conditions.

On May 15, 2000, the Township Board held a public meeting to consider Sprint's application and the Planning Commission's recommendation. At that meeting, Sprint representatives argued in favor of its application. However, several community residents expressed their opposition to the tower, and a petition opposing the tower, signed by 150 area residents, was presented to the Township Board. A formal opposition paper was also presented to the Board. At the end of the meeting the Township Board agreed to a vote on the matter. The minutes of the Township Board meeting read as follows:

> Motion by Mr. Holland and supported by Mrs. Law to deny the site plan for a Sprint cellular tower and antenna at Robin's Nest Shopping Plaza, Sidwell # 18–35–301–039, located on the eastside of Orchard Lake Road, north of North western Highway on the basis that the tower would be inappropriate for this

area, the Petitioner did not demonstrate that a location within the overlay zone could not reasonably meet the coverage and capacity needs of the applicant, technical questions were not answered adequately, and other alternatives were not submitted.

(Stipulated R., Item Number 30 at 7). The Board decided, by a vote of 4 to 3, to deny Sprint's application. The Township Board also notified Sprint of its decision in a one page letter dated May 17, 2000. After advising Sprint that its site plan approval had been denied by the Township Board on May 15, 2000, the letter stated:

This decision was implemented on the basis that the tower would be inappropriate for this area, the petitioner did not demonstrate that a location within the overlay zone could not reasonably meet the coverage, and capacity needs of the applicant. Also, the Board felt that technical questions were not answered and other alternatives were not submitted.

(Stipulated R., Item Number 31). Following the Township Board's rejection, Sprint filed suit in this Court claiming that by denying Sprint's application without substantial evidence in the written record supporting the denial, the Township violated the Federal Telecommunications Act.

On September 1, 2000, Defendant filed a motion for summary judgment. This Court held a hearing on November 1, 2000. However, at the hearing the Court expressed concern that the Township Board had not sufficiently articulated its reasons for denying the permit, such as to allow the Court to engage in meaningful review of the decision. Therefore, the Court requested, and the parties agreed, that the Township would submit a statement of reasons and findings on which the Township Board based the denial. The Township submitted a document entitled, "Township Board Findings Substantiating Reasons for Denial of Application" on December 15, 2000. Plaintiff agreed that these findings would be considered by the Court, for purposes of the motions for summary judgment, as though the "reasons" and "findings" contained therein were specifically set forth by the Township Board in support of its decision denying the application. (*See* 1/9/01 Letter from Plaintiff).

On January 16, 2001, Plaintiff filed a cross motion for partial summary judgment, asking the Court to find that Defendants violated the Act because its decision denying Plaintiff's application was not supported by substantial evidence contained in the record.

In its motion for summary judgment and accompanying briefs, the Township argues that it denied Sprint's application on the grounds that: 1) the tower was inappropriate for the area, 2) Sprint did not demonstrate that a location within the overlay zone could not reasonably meet the coverage and capacity needs of the applicant, 3) technical questions were not answered adequately, and 4) other alternatives were not submitted. (*See* Township Findings at 2). The Township first argues that as substantial evidence exists in the record to support the above conclusions, the Township is entitled to summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Township also argues that Sprint's failure to seek collocation[1] with an existing user precludes it from seeking judicial relief at this time (Pl.'s Resp. Br. at 4).

---

1. The term "collocation" refers to placing new wireless facilities on existing structures.

because it has failed to exhaust administrative remedies.

Sprint contends that summary judgment in its favor is warranted because the Township's denial of the permit failed to comply with the substantial evidence requirement of the Telecommunications Act. Sprint first argues that the evidence shows that the facility is in harmony with the commercial surroundings. Sprint contends that the generalized concerns of residents regarding aesthetics and property values are unsupported in the record. Sprint also argues that there are no viable alternative locations in the overlay zones, that it answered the technical questions asked, and that Sprint has no viable alternatives.

*Standard of Review*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of informing the court of the basis for his or her motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must demonstrate either the absence of a genuine issue of fact or the absence of evidence supporting the nonmoving party's case. *See id.* at 325, 106 S.Ct. at 2554.

**Discussion**

Plaintiff's complaint was brought pursuant to the Federal Telecommunications Act of 1996, 47 U.S.C. § 151, *et. seq.* ("the FTA"). The FTA is "a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 407 (3d Cir.1999). The statute, in pertinent part, provides:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be in writing and supported by substantial evidence contained in the record.

47 U.S.C. § 332(c)(7)(B)(iii). Neither party disputes that a written record of the Township Board's decision exists in this case. Therefore, the issue before the Court is whether the Township Board's decision was supported by substantial evidence contained in the written record. The written record in this case is extensive. The parties provided the Court with a stipulated record of the relevant proceedings, consisting of thirty nine items, hereafter referred to by "item number" followed by the applicable number.

Both parties agree that the "substantial evidence standard" to be applied was set forth in *Telespectrum, Inc. v. Public Serv. Comm'n of Kentucky*, 227 F.3d 414 (6th Cir.2000). In that case, the court had to determine whether a permit denial under 47 U.S.C. § 332(c)(7)(B)(iii) was supported by substantial evidence. In *Telespectrum*, the Sixth Circuit adopted the view that the "substantial evidence" standard of section 332 is the traditional standard employed by courts for review of agency actions. *Id.* at 423. Thus, the Court stated that "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.'" *Id.* (citing *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999)) (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). The opinion also noted that the court "reviews the entire record, including evidence opposed to the result of the decision." *Id.* (citations omitted). However,

as the Sixth Circuit has previously explained,

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (internal quotations omitted.)

The Township contends it denied Sprint's application based upon the following grounds: 1) the tower was inappropriate for the area, 2) technical questions were not answered adequately, 3) Sprint did not demonstrate that a location within the overlay zone could not reasonably meet the coverage and capacity needs of the applicant, and 4) other alternatives were not submitted. (Township Findings at 2). The Court must determine whether substantial evidence contained in the administrative record supports any of the above reasons.

*The Tower is Inappropriate for Area*

The Township's first reason for denying Sprint's application is that the tower would be inappropriate for the area. Resident concerns regarding aesthetics and property value issues were the basis for the Township Board's conclusion that the tower would be inappropriate for the area. Several cases have dealt with permit denials for similar reasons.

In *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach,* 155 F.3d 423 (4th Cir.1998), the court held that the denial of a permit, based upon aesthetic concerns, was supported by substantial evidence in the record. In that case, AT & T sought to build two towers in a heavily wooded residential area, with no signifi-

cant commercial development. Residents voiced objections to the towers at city council meetings, sent letters in opposition to the towers, and presented a petition with over seven hundred signatures in opposition to the towers. The court found such evidence to constitute substantial evidence in support of the denial of the permits.

Similarly, in *Laurence Wolf Capital Mgmt. Trust v. City of Ferndale,* the city denied an application for an antenna based on aesthetic concerns. *Laurence Wolf Capital Mgmt. Trust v. City of Ferndale,* 128 F.Supp.2d 441 (E.D.Mich.2000). One of the city's reasons for the denial was that the proposed antenna "would alter the neighborhood's character." *Id.* at 448. The record before the court contained two photos, one showing the neighborhood as it exists currently and one altered to show the neighborhood as it would appear with the addition of the proposed antenna. After viewing this evidence, the court concluded that "a reasonable mind might accept these photos as adequate to support the conclusion that the proposed antenna would alter the neighborhood's character." *Id.* Accordingly, the court found that the city's denial for the reason that the antenna would change the neighborhood's character supported by substantial evidence.

On the other hand, "[i]n a number of cases, courts have overturned denials of permits, finding (for example) that safety concerns and aesthetic objections rested on hollow generalities and empty records." *Town of Amherst, New Hampshire v. Omnipoint Communications Enter., Inc.,* 173 F.3d 9, 16 (1st Cir.1999)(citing *Iowa Wireless Servs. v. City of Moline,* 29 F.Supp.2d 915, 921–23 (C.D.Ill.1998); *AT&T Wireless PCS, Inc. v. City of Chamblee,* 10 F.Supp.2d 1326, 1331–33 (N.D.Ga.1997)).

In *Iowa Wireless Servs.* the court acknowledged that the concerns of citizens regarding potential aesthetic or economic effects may amount to "substantial" evidence in some circumstances. *Iowa Wireless Servs. v. City of Moline,* 29 F.Supp.2d 915 at 922. However, the court concluded that the evidence in the record before it did not support such a finding. The evidence in the record consisted of the generalized comments of three citizens, who speculated that a fourth tower in their community would impair the aesthetic quality of the area, and comments of another individual that the tower would have a negative effect on property values. While the court found that the record on this issue "presents a close call," the court found that the evidence in the record did not amount to substantial evidence. *Id.* The court noted that an adequate record could have been established by evidence that an additional tower would detrimentally impact the aesthetic environment and property value, but that such evidence was lacking in that case. *Id.* at 923.

In *AT&T Wireless PCS, Inc.,* the Court found that the decision to deny plaintiff's permit was not supported by substantial evidence. ("Defendant's sole basis for denying plaintiff's permit ... is Ms. Brannon's unsupported statement of '[her] determination that this [tower] creates an obnoxious condition.'") *AT&T Wireless PCS, Inc.* at 1332. The Court explicitly found that defendant "thus completely fails" to rebut plaintiff's evidence that no "obnoxious condition" existed. "The Court can find *no* evidence, much less substantial evidence, that plaintiff's proposed power would create an 'obnoxious condition.'" *Id.*

Similarly, in *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township,* 20 F.Supp.2d 875 (E.D.Pa.1998), the court held that generalized concerns and conclusive statements within the record about the aesthetic and visual impacts on the neighborhood do not amount to substantial evidence. In that case, the court found that the "claims asserted by protestants were at best very general and speculative," as the individuals protesting the tower did no more than offer unsubstantiated personal opinions about the effect of the proposed tower. *Id.* at 880.

Unlike the cases above, the Court does not believe that the Township's denial in this case was based on "generalized concerns of citizens," "hollow generalities," or "empty records." Like *Virginia Beach,* the evidence in the record indicates that a significant number of community residents opposed the application due to concerns about aesthetics and property values. Contrary to *Iowa Wireless Servs,* where only four residents expressed concern, several residents spoke out in opposition at the hearing, a petition opposing the tower was presented to the township, and a formal opposition paper was presented to the Township Board. The petition, containing the signatures of 150 community residents, was presented at the Board meeting of May 15, 2000. (Item Number 9). That petition specifically objected to the tower on the ground that it would "create a visual eyesore immediately to the west of the subdivision and would have the potential of lowering property values." (*Id.*). A resident present at the Board meeting expressed his opposition to the tower, and indicated that the tower would "be visible six months of the year as well as disrupt the pristine wooded area." (Item Number 30 at 13). In addition, two other community residents voiced their opposition to the tower at the meeting. (*Id.*).

Unlike *Iowa Wireless* and *Omnipoint Corp.,* objective evidence exists in the record supporting the concerns of the community residents over aesthetics and property

values. The record reflects that residents presented objective evidence supporting their concerns that the tower would be visible from the Kimberly North Subdivision. To address concerns about aesthetics, Sprint arranged for a "balloon test" on March 3, 2000. A red and white balloon the size of a pick-up truck was deployed at the proposed site and raised to a height of 130 feet. (Item Number 16). Defendant asserts, "[e]ven though the balloon was twenty feet across, the pictures taken during the test show the balloon can barely be seen from nearby homes." (Sprint's Mot. for Par. S.J. at 11).[2] In addition to these photos, an area resident presented additional photos to the Planning Commission on March 14, 2000. The record of the meeting reads:

> Marc Shreeman, 7356 Heather Heath, stated that Mr. Haley took a picture from his back yard and he was not consulted in advance. He showed photos to the Commission which reflected different views from those photos shown by Mr. Haley. He stated that the photo taken from 14 Mile Road reflected a meadow and if the tower were to be erected in that area, it would block the view of that meadow. He stated that the tower was a huge infringement on existing residences that have been part of the Township for 35 years . . .

(Item Number 19 at 4).

The Township also contends that community residents are concerned by the aesthetic effect of the tower because it may affect their property values. (Def.'s Reply Br. at 3). In *Telespectrum*, the Sixth Circuit found that a decision denying a permit was not supported by substantial evidence. *Telespectrum*, 227 F.3d 414 (6th Cir.2000). In that case, the only evidence introduced opposing the tower was the testimony of a single resident, who stated his personal belief that the value of his home would diminish if the tower was built on the proposed site. *Id.* at 418.

Unlike *Telespectrum*, the record in this case consists of more than a single resident's personal belief that his property value will diminish if the proposed tower is built. The record in this case reflects that objective evidence was presented to show that residential property values may decrease as a result of the proposed tower. Although Sprint presented some evidence that land values had increased in areas following the installation of cellular towers (Item Number 30 at 10, Item Number 24 at 2),[3] community residents also presented evidence to the Township discussing how land values could diminish as a result of the tower. Indeed, the Kimberly North Improvement Association filed a formal opposition paper, opposing Sprint's application due to diminution of property value, aesthetic concerns and concerns regarding health risks. (Item Number 10). As to the concern over property values, the paper stated "[i]n other communities where cell phone towers have been erected, expert appraisers have gauged diminution of property values from 10% to 40%." (*Id.*). The paper cited and attached various articles from the Microwave News Reprint Service as authority for their position. (Item Number 10, sections A, B & C).

---

**2.** The Court does not necessarily agree. In at least two of the pictures, the balloon appears to be clearly visible to the Court. (Item No. 33).

**3.** This "evidence" reveals that values of properties within 1,000 feet of antennas increased twenty to thirty percent "from 1997 to current year 2000." This record does not, however, reveal whether this increase is consistent with the increase in values of single family homes beyond the 1,000 foot range during that period of time.

 The Court recognizes that the record contains evidence, presented by Sprint, to counter the residents' concerns regarding aesthetics and property values. "The Court is not, however, reviewing the matter de novo; it is ascertaining whether Defendant's conclusion that [the site was inappropriate for the area] is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.'" *Telespectrum,*, 227 F.3d. at 423. In other words, it is not this Court's function to determine whether or not Sprint has produced substantial evidence in support of the permit application; nor is it the Court's function to determine if Sprint's "substantial evidence" is more persuasive than the "substantial evidence" supporting the Township Board's decision. *Mullen v. Bowen*, 800 F.2d at 545. This Court has no "power either to weigh the evidence contained in the record or to substitute its own conclusion for those of the fact-finder." *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 71 (3d Cir.1999). Rather, this Court's function is simply to determine whether or not the Township Board's decision denying Sprint's request to construct the tower was "supported by substantial evidence contained in the record." The Court is satisfied that the Board's decision was, in fact, supported by substantial evidence in the record.

As the Court is satisfied that the Township's first reason for denying Sprint's application was supported by substantial evidence, the Court will not discuss the Township's additional reasons for denying the permit. Similarly, the Court will not discuss the Township's alternative argument that Sprint's failure to seek collocation of its facilities with an existing user precludes it from seeking judicial relief at this time because it has failed to exhaust administrative remedies.

## Conclusion

For the reasons set forth above, Defendant's motion for summary judgment shall be granted, and this action shall be dismissed. Plaintiff's motion for partial summary judgment shall be denied. A Judgment will issue forthwith.