SPRINT SPECTRUM L.P. d/b/a Sprint PCS Plaintiffs,

v.

Richard P. MILLS, individually and as Commissioner of the New York State Department of Education, Charles A. Szuberla, individually and as Coordinator, Facilities Management and Information Services of the New York State Department of Education, and Carl T. Thurnau, individually and as Acting Supervisor of the New York State Department of Education, Office of Facilities Planning, Defendants.

No. 99 CIV. 1041(BDP).

United States District Court, S.D. New York.

Aug. 27, 1999.

**150**

David ·L. Snyder, Snyder & Snyder, White Plains, for Plaintiff.

Lynette P. Phillips, New York State Attorney General's Office, New York, NY, for Defendants.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff, Sprint Spectrum, L.P. ("Sprint"), commenced this action under the Federal Telecommunications Act of 1996 and 42 U.S.C. § 1983 alleging violations of the Act as well as of various constitutional provisions. Before this Court is plaintiff's motion for injunctive relief pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, directing the New York State Department of Education to approve its application to install at the Ossining High School an antenna for the wireless telephone service plaintiff operates under license from the Federal Communications Commission. The Court concludes that the New York State Department of Education has failed to produce substantial evidence to support its denial of the application, and thus plaintiff's motion for injunctive relief is granted. The Court's Findings of Fact and Conclusions of Law follow.

### FINDINGS OF FACT

Sprint is a provider of cellular telephone service in the New York–New Jersey area. In 1995, Sprint paid more than $449 million to obtain a Personal Communication Services ("PCS") wireless broadcast license at an auction held by the Federal Communications Commission ("FCC"). PCS technology is a new generation of wireless service that uses digital transmission to enhance and improve wireless communication. Compared to the more conventional analog technology, PCS Technology provides a clearer connection and fewer dropped calls, as well as other advantages.

As an FCC-licensee, Sprint is obligated to provide wireless communication service to at least 33% of the population located in an area defined by the FCC as the New York–New Jersey Major Trading Area ("MTA") within five years from the date the license was granted. The area includes Ossining, New York. The license has a term of ten years. In order to meet its obligation under the FCC license, Sprint must create a network of individual "cell sites," which are facilities consisting of a radio antenna and attached equipment which send and receive radio signals to and from customers' portable wireless communication handsets and mobile telephones. The antenna feeds low power radio signals received from mobile phones through the attached electronic equipment and into ordinary phone lines so calls can be routed anywhere in the world.

To maintain effective, continuous, uninterrupted service to its subscribers, Sprint is attempting to create a PCS network—an interconnected series of cells which overlap in a grid pattern resembling a honeycomb. Each cell must be precisely located to insure reliable coverage of a given area. If there are too few cell sites or the sites are located too far apart, telephone users may experience inadequate service, including the disconnection of calls, static and difficulty placing calls. Cell sites also have height requirements which vary according to local topography and the configuration of existing structures.

In its effort to provide seamless coverage to the licensed area, Sprint identified Ossining High School (the "high school") as an essential cell site. On September 23, 1998, Sprint signed a lease with the Ossining School District (the "District"), permitting it to locate the cell site on the roof of the high school and requiring the site to be disguised as a flagpole. Under the lease, Sprint is required to pay the School District an annual rent of $30,000, escalating at three percent per year. Sprint also agreed to provide, free of charge, three Sprint PCS wireless telephones to the School District.

The regulations of the New York State Department of Education (the "Department") provide that when construction of any alteration to a school exceeds $10,000, the alteration plans must be approved by the Department's Office of Facilities Planning. *See* Title 8, New York Codes, Rules and Regulations, Part 155.2. Because the cost of the installation of the cell site at Ossining High School would exceed $10,000, on December 3, 1998, the plans and specifications for the site were filed with the Department's Office of Facilities Planning for its approval.

By letter dated January 12, 1999, the Department denied Sprint's application. The letter, written by defendant Charles A. Szuberla, Coordinator of Facilities Management and Information Services, informed Sprint that the application was de-

nied because of the Department's belief that (1) "arrangements between public and private entities violate Article 8, Section 1 of the New York State Constitution if they primarily benefit the private party," (2) the proposal would likely fail to comply with Education Law Section 403–a, and (3) the School District lacked the authority to enter into the contract with Sprint. Defendants do not assert that Sprint's application was denied because it failed to comply with any Office of Facilities Planning regulations governing such applications. Sprint asserts that without the site, a gap in coverage exists, preventing it from adequately serving the area.

Sprint has brought suit against Richard P. Mills, Commissioner of the New York State Department of Education, Charles A. Szuberla, Coordinator, Facilities Management and Information Services of the New York State Department of Education, and Charles T. Thurnau, Acting Supervisor of the Office of Facilities Planning. Sprint alleges in its complaint that the Department's denial of its application violated several provisions of the Telecommunications Act of 1996. Specifically, Sprint contends that: the denial of the application was not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Claim 1); the defendants' action prohibits or has the effect of prohibiting the provision of personal wireless services in the area in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Claim 2); defendants unreasonably discriminated against Sprint in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) (Claim 3), and defendants violated 47 U.S.C. § 253(a) which provides in part: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service" (Claim 4). Finally in Claim 5, Sprint alleges under 42 U.S.C. § 1983 violations of its federally protected rights under the 1996 Telecommunications Act, the due process and equal protection clauses of

the United States Constitution and the New York Constitution, the Supremacy Clause of the United States Constitution and the Fifth Amendment takings clause. Plaintiff seeks a mandatory injunction ordering defendants and related persons to issue the required permit and remove all further barriers to the construction of the facility.[1] Sprint also seeks monetary damages.

### CONCLUSIONS OF LAW

The Telecommunications Act of 1996

The Telecommunications Act of 1996 (the "Act") is an omnibus overhaul of the federal regulation of communications companies. *Cellular Telephone Co. v. Oyster*

1. This case differs slightly from recent cases brought under the 1996 Act in that Sprint, a private company, contracted with a the school district, a public entity. In the majority of such cases, local zoning boards have denied petitions of wireless companies for special use permits, where those companies have contracted with private parties for use of their property. *See, e.g., Cellular Telephone Co. v. Oyster Bay*, 166 F.3d 490 (2d Cir.1999); *Cellco Partnership v. Town Plan and Zoning Comm'n of the Town of Farmington*, 3 F.Supp.2d 178 (D.Conn.1998); *Omnipoint Corp. v. Zoning Hearing Board of Pine Grove Township*, 20 F.Supp.2d 875 (E.D.Pa.1998); *Smart SMR of New York, Inc. v. Zoning Comm'n of the Town of Stratford*, 995 F.Supp. 52 (D.Conn.1998). By contrast, in this case, the Village of Ossining determined that Sprint's application to install the telecommunications facility on top of the high school was not subject to the zoning laws of the Village.

2. The Act provides in pertinent part:
 (7) Preservation of local zoning authority
 (A) General authority
 Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
 (B) Limitations
 (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

*Bay*, 166 F.3d 490, 493 (2d Cir.1999). The Act was intended to promote the development of telecommunications technology and accelerate its availability by opening telecommunications markets to competition. *See Reno v. ACLU*, 521 U.S. 844, 857, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (the 1996 Act's "primary purpose was to reduce regulation and encourage the rapid deployment of new telecommunications technologies."). While generally preserving the authority of local governmental entities in zoning and placement matters, the Act limits local authority to regulate personal wireless services.[2] Section 704 of the Act established the National Wireless Telecommunications Siting Policy, with the

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.
47 U.S.C. § 332(c)(7).

goal of establishing "a federal regulatory framework to govern the offering of all commercial mobile services." Omnibus Budget and Reconciliation Act of 1993, 107 Stat. 312; H.R. Conf.Rep. No. 103–213, 103d Cong., 1st Sess. 490 (1993) U.S.Code Cong. & Admin.News 1993, pp. 1088, 1179. Congress' intent in establishing this federal regulatory strategy was to "foster the growth and development of mobile services that, by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure." H.R.Rep. No. 103–111, 103d Cong., 1st Sess. 260 (1993) U.S.Code Cong. & Admin.News 1993, pp. 378, 587.

### Substantial Evidence

■ The Telecommunications Act of 1996 provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In determining whether a denial was supported by substantial evidence, a court must employ "the traditional standard used for judicial review of agency actions." *Cellular Telephone*, 166 F.3d at 494 (citation omitted). This standard of review is deferential, and a Court may neither engage in its own fact-finding nor supplant the local authority's reasonable determinations. *Id.; see also Prime-Co Personal Communications, L.P. v. Village of Fox Lake*, 26 F.Supp.2d 1052, 1063 (N.D.Ill.1998). Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence. *Cellular Telephone*, 166 F.3d at 494. " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, [pin] (1951)). However, the record should be viewed in its entirety, including evidence opposed to the local authority's view. *American Textile Mfr.*

*Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981).

The Act establishes procedural requirements with which local boards must comply when evaluating cell site applications. *Id.* However, the Act does not " 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.' " *Id.* (quoting *Cellular Telephone Co. v. Zoning Bd. of Adjustment*, 24 F.Supp.2d 359, 366 (D.N.J. 1998)).

"We look at the record as a whole to see whether or not there was substantial evidence that the [application was] denied on permissible grounds." *Cellular Telephone*, 166 F.3d at 495. The defendants maintain that the Department of Education complied with this requirement and that substantial evidence was contained not only in the January 12, 1998 letter from the Department's Office of Facilities Planning informing Sprint that its application was denied, but also in "a steady stream of written communications between the parties." State Defendants' Memorandum in Opposition to Plaintiff's Motion for Injunctive Relief and in Support of Motion to Dismiss at 8 [hereinafter Defendants' Memorandum in Opposition].

The record before the Court contains four letters sent between the parties. Two of the letters were from defendants to Sprint regarding the application. The first, dated November 24, 1998, responded to a lengthy letter from Sprint dated October 28, 1998, in which Sprint asserted the legality of the lease with the District; the second was the Department's final rejection of Sprint's application, sent in response to another lengthy letter from Sprint dated December 16, 1998. Sprint included with its letters congressional testimony on the public benefits of wireless telephones, and a national survey of public school principals and teachers documenting the importance and usefulness of wireless phone technology in classrooms.

In each of its letters to Sprint, the Department reiterated the same reasons for

the denial of the application: the Department's belief that (1) "arrangements between public and private entities violate Article 8, Section 1 of the New York State Constitution if they primarily benefit the private party," (2) the proposal would likely fail to comply with Education Law Section 403–a, and (3) that the School District lacked the authority to enter into the contract with Sprint.[3] Defendants do not assert that Sprint's application was denied because it failed to comply with any Office of Facilities Planning regulations governing such applications.

Contrary to the Department's position, its cryptic responses to Sprint did not amount to substantial evidence justifying its denial of the application. Its letters denying Sprint's application offered only vague, generalized, unsubstantiated reasons for its action. *See Cellular Telephone*, 166 F.3d at 496 (finding that a "few generalized expressions of concern with 'aesthetics'" and citizen concerns with the impact on property values of proposed communications facility cannot serve as substantial evidence); *Cellco Partnership v. Town Plan and Zoning Comm'n of the Town of Farmington*, 3 F.Supp.2d 178 (D.Conn.1998) (written decision by town planning and zoning commission denying request by personal wireless service provider for permit to install telecommunications facility in church steeple on basis that it would be out of character with surrounding neighborhood due to height not supported by substantial evidence);

*Omnipoint Corp. v. Zoning Hearing Board of Pine Grove Township*, 20 F.Supp.2d 875, 879 (E.D.Pa.1998) (no substantial evidence existed in support of Board's denial of special exception for erection of telecommunications tower where Board misapplied "burden of proof required in special exception cases" and denial was "also based on mere speculation that ... project was detrimental to the health, safety and welfare of the community."); *Smart SMR*, 995 F.Supp. at 57 (zoning commission's general disfavor of personal wireless service facilities in all residential areas did not provide substantial evidentiary basis for denying permit to install wireless service facility); *Iowa Wireless Services, L.P. v. City of Moline, Illinois*, 29 F.Supp.2d 915 (C.D.Ill.1998) (finding that health concerns about radio waves, radio interference, structural safety concerns, effect on land values and aesthetic blight was not supported by substantial evidence to justify denial by city of special use permit sought by wireless personal communications services). Each of the Department's reasons for the denial will be addressed in turn.

### Article 8, Section 1 of the New York State Constitution

■ Article 8, Section 1 of the New York State Constitution prohibits "the gift, grant or loan of public property to a private party." A lease of public land to a private party, however, does not violate Article 8, Section 1 where "the land is to

---

**3.** The substance of the Letter in its entirety states:

As previously relayed to you by Mr. Thurnau, the State Education Department's Office of Facilities Planning and Office of Counsel feel that arrangements between public and private entities violate Article 8, Section 1 of the New York State Constitution if they primarily benefit the private party. The donation of three (3) mobile phones in our opinion is incidental to the primary benefit which accrues to Sprint through the provision of this cell tower.

Furthermore it is not certain that the proposal would comply with Education Law Sec-

tion 403–a, as that section applies only to real property that is not currently needed for school district purposes. In addition, the New York State Court of Appeals has ruled that only the State Legislature has the authority to sanction the diversion of public property for private use. It is the opinion of the Education Department's Office of Counsel that the Ossining School District does not have the legislative authority it needs to enter into the proposed arrangement with Sprint even if it can articulate a public purpose that would satisfy the requirements of Article 8, Section 1.

The Office of Facilities Planning will not approve this project.

be used for or the lease serves a public purpose." *Port Chester Yacht Club v. Village of Port Chester*, 123 A.D.2d 852, 507 N.Y.S.2d 465, 467 (2nd Dep't 1986). "[A] municipality may lease its public improvements to private concerns so long as the benefit accrues to the public and the municipality retains ownership of the improvement." *Murphy v. Erie County*, 28 N.Y.2d 80, 88, 320 N.Y.S.2d 29, 268 N.E.2d 771 (1971) (lease entered into by county with private company for management of stadium "is in furtherance of a public and not a private purpose"); *see also Altona Citizens Committee, Inc. v. Town of Altona*, 54 N.Y.2d 908, 445 N.Y.S.2d 131, 429 N.E.2d 809 (1981) (state lease of public lands to nonprofit charitable and educational Trust established to preserve and protect Native Americans and their culture was for public purpose). The fact that a private party will also derive a benefit is not enough to invalidate a lease serving a public purpose. *See Murphy*, 28 N.Y.2d at 87–88, 320 N.Y.S.2d 29, 268 N.E.2d 771.

The defendants argue that the lease at issue here was not for a public purpose or benefit, but rather for the primary benefit of Sprint, which defendants assert will enjoy an "economic and competitive windfall" from installation of its cell site. Defendants' Memorandum in Opposition at 10. They argue that Ossining High School would not gain from the installation of the cell site because, *inter alia*, ongoing disruption would result from the construction and maintenance of the tower. However, in denying Sprint's application, defendants did not present any concrete evidence to support this contention. Furthermore, defendants' responses almost totally ignore the broader benefit to the public, as well as to the school, that delivery of wireless communications services would provide.

Congress has expressly emphasized that providing wireless telephone services furthers an important public purpose, as the federal statute under which plaintiff was issued its PCS license communicates. The statute creating the Federal Communications Commission directs the commission to issue wireless communications licenses,

> to make available, so far as possible, to all the people of the United States, a rapid, efficient, Nation-wide, and worldwide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication . . . .

47 U.S.C. § 151.

In New York, cellular telephone companies are afforded the status of public utilities. *Cellular Telephone Co. v. Rosenberg*, 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993); *see also, Lucas v. Planning Board of the Town of La Grange*, 7 F.Supp.2d 310, 323 n. 8 (S.D.N.Y.1998) ("It should be noted that under New York law, cellular providers are considered 'public utilities,' and are entitled to wider zoning latitude in order to provide their public services."). As such, a cellular telephone company's application for a variance must be judged by local authorities on a different standard than that applied to the usual application for a use variance. *See Consolidated Edison Co. v. Hoffman*, 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978). "To be granted such a use variance, the utility should be required to show that denial of the variance would cause unnecessary hardship, but not in the sense required of other applicants." *Id.* at 610, 403 N.Y.S.2d 193, 374 N.E.2d 105. Rather, a local zoning board must consider whether the public utility has shown "a need for its facilities" and whether the needs of the broader public would be served by granting the variance. *Id.* at 608–10, 403 N.Y.S.2d 193, 374 N.E.2d 105. In addition, "where the intrusion or burden on the community is minimal, the showing required by the utility should be correspondingly reduced." *Id.*

In reviewing Sprint's application, the State Department of Education should

have applied these principles. Sprint designed the facility to be a flagpole, much like the one already existing on top of the high school, so the facility would be unintrusive aesthetically and structurally. In addition, a condition of the lease requires Sprint to use the site in a manner which "shall not unreasonably disturb the occupancy of ... other tenants." PCS Site Agreement, § 1. The burden on the school of installing the facility would be minimal. In addition, Sprint presented evidence, in the form of congressional testimony and a national survey, demonstrating the usefulness of cell phones to public school personnel in emergency situations and agreed to provide the high school with three cellular phones, free of charge.

Because the lease is in furtherance of a public purpose, defendants' reliance on *Matter of Lake George Steamboat Co.,* 30 N.Y.2d 48, 330 N.Y.S.2d 336, 281 N.E.2d 147 (1972), is misplaced. In that case, the New York Court of Appeals stated that "a municipality, without specific legislative sanction, may not permit property acquired or held by it for public use to be wholly or partly diverted to a possession or use exclusively private." 30 N.Y.2d at 51, 330 N.Y.S.2d 336, 281 N.E.2d 147. As noted above, the lease between Sprint and the high school allowing installation of a cell site in the form of a flagpole does not constitute the diversion of publicly owned property for an exclusively private use. The high school and the surrounding community would also benefit from installation of the cell site in the form of more sophisticated and complete coverage of the licensed area.

### Section 403–a of the Education Law

■ Education Law § 403–a provides:

1. The board of education or trustees of a school district are hereby authorized to adopt a resolution providing that specific real property of such district is not currently needed for school district purposes and that the leasing of such real property is in the best interest of the school district.

N.Y. Educ. Law § 403–a. Sections 403–a (1)(a) and (b) further provide that the rental payment shall not be less than the fair market rental value and that the lease shall not be longer than 10 years. Defendants apparently argue that leasing the high school's roof for installation of an antenna in the form of a flagpole is not a lease of surplus school property within the meaning of the statute. They argue that "the property in issue was, is, and continues to be needed as a roof to protect students and educators from inclement weather conditions, and to provide a safe and secure learning environment." Defendants' Opposition at 12. The Department, however, has failed to demonstrate how, if at all, the high school will be deprived of a roof or how the plan would endanger school personnel and students. The section of the roof to be used for construction of a flagpole is currently not being used for any other purpose. The Office of Facilities Planning requires, *inter alia,* that for alteration plans and specifications to be approved, the plans must comply with State Uniform Fire Prevention and Building Code, § 155.2(a)(1)(i); must not use materials, equipment and construction methods which may endanger the health, safety and comfort of school occupants, § 155.2(a)(1)(ii), and must be submitted under the signature and seal of an architect or engineer licensed to practice in the state of New York. § 155.2(a)(4). The Department offered no evidence demonstrating that the plan and lease did not comply with these regulations, and Sprint has satisfactorily documented its compliance with all applicable regulations. *See* Affidavit of Antonio A. Gualtieri in Support of Motion for Injunctive Relief.

### School District Authority

Because the portion of the roof that would house Sprint's cell site is not currently needed for school district purposes, Sprint's cell site would serve a public purpose, and the District determined that the leasing of such property is in the best

interest of the District, defendants' argument that the school district lacked authority to enter into the lease has no merit.

Unreasonable Discrimination

The Telecommunications Act of 1996 provides, "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—(I) shall not unreasonably discriminate among providers of functionally equivalent services, and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i).

Plaintiff argues that defendants have unreasonably discriminated against it by preventing Sprint from actively competing with providers of functionally equivalent landline and wireless telephone services operating in and around the high school site. The wireless competitors include AT & T Wireless Services, Bell Atlantic Mobile, Nextel Communications, and Omnipoint Communications. Landline competitors include MCI/WorldCom and Bell Atlantic. Plaintiff alleges "upon information and belief" that there are conventional landline telephones, as well as coin-operated pay telephones, which are functionally equivalent to the service provided by Sprint, on the school's grounds. Plaintiff's Memorandum of Law in Support of Motion for Injunctive Relief at 6.

■ As an initial matter, this Court rejects Sprint's argument that landline services are "functionally equivalent" to the wireless services provided by Sprint and thus rejects Sprint's claim of discrimination on grounds that it is barred from competing with conventional landline telephone services. *See* H.R. Conf.Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), reprinted in 1996 U.S.C.C.A.N. 4, 222 (the term functionally equivalent refers "only to personal wireless services as defined in this section that directly compete against one another."); *Omnipoint Communica-*

*tions v. City of Scranton,* 36 F.Supp.2d 222, 234 (M.D.Pa.1999) (rejecting argument that wireless and landline services are "functionally equivalent"). The Act defines personal wireless services as "commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services." 47 U.S.C. § 332(c)(7)(C). Thus, Sprint's argument that the Department discriminated against it because it allowed Sprint's landline competitors to operate at the Site is irrelevant to this inquiry.

■ This Court finds, however, that the Department unreasonably discriminated against Sprint by denying its application to install a telecommunications facility on the roof, thereby making it much more difficult fc⁻ Sprint to compete with other wireless services. First, the Department's action serves to frustrate the primary purpose of the Act "to increase competition in the telecommunications industry." *Sprint Spectrum L.P. v. Town of Easton,* 982 F.Supp. 47, 51 (D.Mass.1997) (internal quotations omitted); *Western PCS II Corp. v. Extraterritorial Zoning Authority of the City and County of Santa Fe,* 957 F.Supp. 1230, 1237 (D.N.M.1997) (same); *BellSouth Mobility, Inc. v. Gwinnett County,* 944 F.Supp. 923, 927 (N.D.Ga. 1996) (same). The Department's rejection of Sprint's application either denies Sprint the opportunity to compete in the licensed area, or, at the very least, significantly increases Sprint's costs by forcing it to find an alternative site. *See Western PCS,* 957 F.Supp. at 1237–38.

Second, because the Department's denial was not supported by substantial evidence, as explained above, its action amounts to unreasonable discrimination. *See Sprint Spectrum L.P. v. Jefferson County,* 968 F.Supp. 1457, 1467–68 (N.D.Ala.1997) ("An inquiry into the reasonableness of governmental action focuses on whether a 'legitimate basis' for the contested action is presented."). Since the Department has not presented sound rea-

sons for its decision, this Court concludes that the Department's action amounts to "unreasonable discrimination" within the meaning of the Act.

Prohibiting Wireless Services: 47 U.S.C. § 332(c)(7)(B)(i)(II)

■ The 1996 Act provides that "the regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government or instrumentality thereof—shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Courts have interpreted this provision of the Act in various ways. In order to find a violation of this section, many courts have required a showing that local zoning authorities have a general policy or bias against granting permits for personal wireless services. *See, e.g. Omnipoint Communications*, 36 F.Supp.2d at 232 (" § 332(c)(7)(B)(i)(II) is violated only where the local regulatory agency creates a general ban against all personal wireless communication services."); *Smart SMR*, 995 F.Supp. at 57–58 (zoning commission which had general policy and bias against granting special case permits for personal wireless service facilities in residential areas violated § 332(c)(7)(B)(i)(II)). Courts have denied claims where no such showing of a general policy or bias was made. *See, e.g., Sprint Spectrum L.P. v. Willoth*, 996 F.Supp. 253, 259 (W.D.N.Y.1998) (Town did not prohibit wireless services in denying Sprint's application where Town rejected "all or nothing" application for three telecommunications towers, but it would have approved application for one tower in town's industrial zone); *Cellco Partnership*, 3 F.Supp.2d at 185 ("A zoning commission's single decision to deny an application for a special permit, even if it results in a provider's inability to provide cellular service in a particular area is not prohibitive within the meaning of the Telecommunications Act."); *AT & T Wireless Servs., of Florida, Inc. v. Orange County*, 982 F.Supp. 856, 860 (M.D.Fla.1997) (de-nying relief to wireless service provider under § 332(c)(7)(B)(i)(II) because there was no evidence that the city council had a general bias against a communications tower in residential area).

A general bias or policy against personal wireless services is not the only grounds on which Courts have found the provision of the Act violated. Courts have found violations where local authorities have denied applications to deploy digital PCS technology. *See, e.g., Western PCS II Corp.*, 957 F.Supp. at 1237–38 (1997) (zoning authority prohibited wireless service by denying company's application to provide digital PCS services where other two competitors operating in the area provided only analog service); *Jefferson County*, 968 F.Supp. at 1468 (delay created by zoning commission's moratoria on applications to install telecommunications towers had the effect of prohibiting the provision of new digital PCS technology).

■ This Court finds that in denying Sprint's application to install a telecommunications tower in the form of a flagpole, defendants violated 42 U.S.C. § 332(c)(7)(B)(i)(II). Defendants have suggested that, in their view, the leasing of school property to a telecommunications company for installation of a site would be impermissible because such a lease would invariably allow the use of public property solely for the benefit of a private party. The Department asserts that, as a consequence, such leases violate Article 8, Section 1 of the New York Constitution and § 403–a of New York Education Law. In addition to concluding that our understanding of the law does not compel or authorize this result, we also note that defendant's position, if accepted, would bar telecommunications companies from installing facilities on any public school property and, contrary to explicit congressional policy, would frustrate rapid deployment of the new digital PCS technology.

47 U.S.C. § 253(a)

■ The provision of the 1996 Act at issue here, 47 U.S.C. § 253, entitled "Removal of barriers to entry," provides, in relevant part:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

47 U.S.C. § 253(a).

Section 253 preempts all state and local regulations that "prohibit or have the effect of prohibiting" any company's ability to provide telecommunications services, *id.*, unless such regulations fall within either of the statute's two "safe harbor" provisions, *see id.* §§ 253(b), (c). Section 253(b) permits states to adopt "competitively neutral" regulations "necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." As one court has stated: "Section 253 ... preserves the rights of municipalities to enforce zoning laws, to regulate the time, place, and manner of the installation, maintenance, operation and repair of a provider's facilities. 141 Cong. Rec. S8172 (1995)." *AT & T Communications v. City of Austin, TX.*, 975 F.Supp. 928, 940 n. 10 (W.D.Tex.1997). Section 253(c) preserves the power of local authorities to: "manage the public rights-of-way" and "require fair and reasonable compensation" for the "use" thereof.

State defendants turn to § 253(b) to support their decision denying Sprint's application. Defendants assert that their interpretation of Article 8, Section 1 of the New York State Constitution was an example of a state imposing " 'on a competitively neutral basis ... requirements necessary to ... protect the public safety and welfare ... and safeguard the rights of consumers.' " Defendants' Memorandum

in Opposition at 18 (quoting 47 U.S.C. § 253(b)).

The Department has not presented any evidence showing that its decision protects the public safety and welfare, particularly in light of the fact that it has not shown that Sprint failed to comply with Office of Facilities Planning Regulations and construction requirements. Furthermore, this Court has found the lease between Sprint and the high school did not violate Article 8, Section 1 of the New York State Constitution. The Department thus violated § 253(a) by effectively "prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Sprint's claim under § 253(a) is granted.

Appropriate Remedy Injunctive Relief

The 1996 Act does not specify a remedy for violations of the cellular siting subsection, but rather grants jurisdiction for review of any final action that is inconsistent with its provision and directs the court to "hear and decide such action[s] on an expedited basis." *See* 47 U.S.C. § 332(c)(7)(B)(v). "[T]he majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits." *Cellular Telephone*, 166 F.3d at 497; *see also Iowa Wireless*, 29 F.Supp.2d at 924 (ordering defendant to grant plaintiff a special use permit "with all deliberate speed"); *Omnipoint Corp.*, 20 F.Supp.2d at 881–82 (ordering zoning board to issue requested special exception permit and declining to remand because to do so would "frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis"); *Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 747 (concluding injunction directing defendant to issue permit is appropriate relief under TCA); *BellSouth Mobility*, 944 F.Supp. at 929 (granting plaintiffs' request for writ of mandamus and ordering defendant to grant plaintiffs' requested permit). *But*

*see PrimeCo,* 26 F.Supp.2d at 1066–67 (declining plaintiff's request for a writ of mandamus and remanding case to Village Board of Trustees for additional proceedings in accordance with the opinion); *AT & T Wireless Servs. of Florida v. Orange County,* 982 F.Supp. 856, 860–62 (M.D.Fla. 1997) (declining AT & T's request for injunctive relief in deference to local authority and remanding to Board for further proceedings).

### Showing Required for Injunction

■ A party seeking to obtain a preliminary injunction ordinarily must establish that absent award of the injunction it will suffer irreparable harm and must demonstrate either (1) "a likelihood of success on the merits" or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly" in the movant's favor. *Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 779–80 (2d Cir.1994) (quotation marks omitted); *Coca–Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 314–15 (2d Cir. 1982).

■ Sprint must meet an even more rigorous standard here. A "clear" or "substantial" showing of a likelihood of success is required where the injunction sought "will alter, rather than maintain, the status quo"—that is, where the injunction is properly characterized as "mandatory" rather than "prohibitory." *Jolly v. Coughlin,* 76 F.3d 468, 473–74 (2d Cir. 1996) (citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995)).

Plaintiff seeks an Order mandating that the Department of Education allow installation of a Sprint facility at Ossining High School. The injunction it seeks is mandatory rather than prohibitory. Although it is not always clear which of the two types of injunction is at issue, *see id.,* here there is no question that the injunction would alter, and not preserve, the status quo because the Department would be required to allow installation of the facility.

Requests for mandatory injunctions are subjected to a stricter standard than are requests for prohibitory injunctions. The moving party must show "clearly that he or she is entitled to relief or that extreme or very serious damage will result from a denial of the injunction." *Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir. 1997). In other words, the movant must make a clear or substantial showing of a likelihood of success on the merits. *Jolly,* 76 F.3d at 473. To justify an award of preliminary relief, Sprint must both make a clear or substantial showing that it is likely to succeed in proving a violation of the 1996 Act and demonstrate irreparable harm from the lack of interim relief. Because this Court finds that defendants have violated four provisions of the 1996 Act, Sprint has met its burden here.

Plaintiff argues that it has suffered "immeasurable economic harm to its business operation" and will continue to suffer such harm if forced to delay the implementation of the PCS network. Plaintiff's Memorandum of Law in Support at 22. Plaintiffs allege further that the Department of Education's denial of Sprint's application has prevented plaintiff from using its FCC license. Sprint asserts that, given the highly competitive, rapidly evolving field of wireless communications, it is doomed to fail if it experiences any further delay in implementing this emerging technology.

Congress passed the Telecommunications Act in an effort to increase competition in the telecommunications industry by placing certain limitations on local authorities' regulation of the placement, construction and modification of personal wireless services facilities. *See Cellco,* 3 F.Supp.2d at 182; *Omnipoint,* 36 F.Supp.2d at 227. The Act is designed " 'to provide for a procompetitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technology and services to all Americans and

by opening all telecommunications markets to competition.'" *AT & T Wireless PCS, Inc. v. City Council, Virginia Beach,* 979 F.Supp. 416, 423 (E.D.Va.1997) (quoting H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 113 (1996), 1996 U.S.C.C.A.N. 10, 124). Wireless PCS technology is one of the advanced telecommunications services intended to be promoted by fostering competition in the industry. *Id.* This Court does not have the ability at this point to ascertain the extent of the damage to Sprint (if any) caused by the Department of Education's denial of its application. However, regardless of whether Sprint would be "doomed" if it is unable to install its facility at the high school, allowing the denial to stand would be inconsistent with the policies underlying the 1996 Act—i.e., insuring the speedy deployment of wireless services to the public which undoubtedly benefits from such technology.

 In keeping with the Act's mandate that aggrieved parties be granted relief on an expedited basis, this Court finds that a mandatory injunction requiring the New York State Department of Education to grant Sprint's application is the appropriate remedy. *Cellular Telephone,* 166 F.3d at 497 ("the weight of authority" is "that injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action.").

### CONCLUSION

For the foregoing reasons, this Court finds in favor of plaintiff on Claims One, Two, Three and Four and orders the New York State Department of Education to issue the required permits allowing Sprint to install at the Ossining High School a telecommunications facility in the form of a flagpole. The parties shall appear for a pre-trial conference on September 7, 1999, at 9:15 a.m.

SO ORDERED: